**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|    SHAKEEL S. KHAN | ) | Case No. 12-10029-BFK |
|    AYESHA KHAN | ) | Chapter 7 |
| | ) | |
|                Debtors | ) | |
| | ) | |
| RACETRAC PETROLEUM, INC., | ) | |
| | ) | |
|                Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 12-01045 |
| | ) | |
| TANVIR AHMED | ) | |
| | ) | |
|                Defendant | ) | |

**MEMORANDUM OPINION**

A hearing was held on October 09, 2012 on the Plaintiff's Motion for Summary Judgment (Docket No. 33). The Defendant filed an Objection (Docket No. 39) and the Plaintiff filed a Reply to the Objection (Docket No. 43). The Plaintiff and Defendant were both present through counsel. For the reasons stated below, the Court will: (a) deny the Motion insofar as it seeks summary judgment as a matter of collateral estoppel based on the Circuit Court's Default Judgment Order; and (b) grant the Motion on the ground that there is no genuine issue as to any material fact, and the Plaintiff is entitled to judgment as a matter of law.

**Findings of Fact**

Having reviewed the entire record, the Court finds that there is no genuine dispute with respect to the following facts:

1.      On or about August 31, 2006, the Debtor, Tanvir Ahmed, and another individual, Sayeeda Sultana (doing business as "RTS Group, LLC"), entered into a Gasoline Services Agreement (the "GSA"), a Lease, a Guaranty and a Merchant Agreement with Racetrac Petroleum, Inc. ("Racetrac").  These documents were part of an integrated transaction for the Debtor, Mr. Ahmed and Ms. Sultana to open up a Racetrac gas station and convenience store (Store No. 6798), located at 341 Oyster Point Road, Newport News, VA 23602.

2.      At the time he entered into these contractual arrangements, the Debtor was living in Northern Virginia. Ahmed Dep. p. 28., June 6, 2012.

3.      Section 5(A) of the GSA provides as follows:

> Racetrac Funds:  All sales of gasoline shall be for cash or credit, debit or other card based transactions in accordance with the Pay at the Pump procedures discussed herein.  Title to the proceeds of all sales by Contract Operator of gasoline ("Racetrac Funds") shall at all times be vested in and belong to Racetrac and any possession and control thereof by Contract Operator shall be as trustee and agent for the use and benefit of Racetrac, and Contract Operator shall not use Racetrac Funds for purchases, operating expenses or otherwise.  Contract Operator acknowledges that Contract Operator owes a duty of trust to Racetrac in the collection and safe keeping of all funds collected for such sales of fuel, and acknowledges that Contract Operator is serving in a fiduciary relationship with Racetrac.

4.      The Debtor was introduced to the prospect of becoming a Racetrac operator by a friend of his, Mr. Mohammed Eslam, who in turn, introduced the Debtor to Anwar Eslam. Ahmed Dep. pp. 14–19.

5.      The Debtor invested $12,500 in the business, and became a part owner.  Ahmed Dep. pp. 15-16.

6.      Shortly after the Debtor and Ms. Sultana took over the store, Mohammed Eslam was out of the picture, and Anwar Eslam began to run day to day operations.  Ahmed Dep. p. 21 ("So then it was all Anwar.  So Anwar was going to run the whole store, day to day, from morning to night.  It was his baby, and I was in Arlington.")

2

7.    For the first nine months or so, the Debtor was involved with the business, albeit from a distance. He had daily conversations with Anwar Eslam, sometimes multiple times a day. Ahmed Dep. p. 23. However, his involvement in the business, together with the Debtor's full time employment, began to take its toll on the Debtor's personal life. Ahmed Dep. p. 23.

8.    Initially, the parties set up a bank account at Bank of America (Account No. ending in 4207) for the receipt of gasoline proceeds and convenience store products proceeds. The Debtor was a signatory on this account, and had access to the account information. Ahmed Dep. p. 33.

9.    In September 2007, with the business continuing to take a toll on the Debtor's personal life, the Debtor requested that he be bought out of the business. Ahmed Dep. pp. 24-25. The Debtor stopped monitoring the daily gas sales at around the same time, in September 2007. Ahmed Dep. p. 51.

10.    At about this time, in September 2007, Ms. Sultana opened up a second account at Bank of America, ending in 0610. The Debtor did not have access to this account, and was not a signatory on the account. Sultana Dep. pp. 77-78, June 6, 2012.

11.    Ms. Sultana testified at her deposition that Peter Bowling, Racetrac's account representative, told her that she should open up this second bank account, because the first account was continually short owing to one or more of the principals' accessing the funds.[1] Sultana Dep. pp. 50 ("Mr. Peter, he force us because he saw Tanvir kept taking money from that, and he told us to open another account"); 77 ("after long time, Peter, he told me to take his name

---

[1] To be clear, the Court does not make a finding that anyone improperly accessed the funds, at this point in the chronology. The Court's finding of fact here is limited to the fact that Peter Bowling advised Ms. Sultana to open the second account, based on his perception that the account was continually short.

3

out from that account because he keep taking money. And Peter, the supervisor of Raceway, he help us to open another account").

12. The Debtor testified that he learned about the new bank account in January 2008. Ahmed Dep. p. 59. He testified that he became aware of the new account because of the lack of activity in the old account. Ahmed Dep. p. 60. He did not go to Bank of America to demand access to the account, but he did demand access to the account with his business partners on two or three occasions. Ahmed Dep. p. 63.

13. In April 2008, the store closed. Just prior to the store closing, Ms. Sultana took $115,000 out of the 0610 Bank of America account. Sultana Dep. p. 51. She used these funds to pay back herself, and various friends and relatives who had invested in, or loaned money, to the store. Sultana Dep. pp. 51-67. According to Racetrac's Affidavit in Support of its Motion, which is not contested, the precise amount improperly withdrawn is $115,748.09. Giambalvo Aff. ¶ 6, Aug. 24, 2012.

14. The Affidavit of Mr. Giambalvo submitted in support of Racetrac's Motion asserts: "After application of Ahmed's remaining deposit under the Lease Agreement, the amount of unpaid gasoline proceeds equals $86,123.07." Giambalvo Aff. ¶ 7. However, in the State court lawsuit, the same affiant, Mr. Giambalvo asserted: "The deficient funds amounted to $67,106.48." Mot. for Summ. J., Docket No. 33, Ex. O. Similarly, Racetrac's State court Complaint alleged that, "[a]s a direct and proximate result of the defendants' breach of their fiduciary duty, Racetrac has suffered damages in the amount of $67,106.48." Mot. for Summ. J., Docket No. 33, Ex. M (Complaint, ¶ 37). The difference appears to be (though the difference is not exact) that in the State court lawsuit, Racetrac was also claiming $10,000 in liquidated damages, $6,449.41 for an unpaid electric bill, $2,567.18 for an air conditioner repair bill, and

attorney's fees and costs. The Giambalvo Affidavit in this adversary proceeding states: "Attached to my affidavit is a spreadsheet entitled 'Racetrac Petroleum, Inc.'s Loss of Fuel Proceeds.' This spreadsheet accurately reflects the data from each report and represents the total amount due to Racetrac." Giambalvo Aff., ¶ 8. No spreadsheet is attached to the Affidavit. Accordingly, the Court will use the lower figure of $67,106.48, as the amount of gasoline trust funds that ultimately were not accounted for by the Debtor.

15. The Debtor does not dispute: (a) that all of the gasoline proceeds that were deposited were owned by Racetrac; (b) that the proceeds were Racetrac's property; (c) that he was holding the funds for Racetrac's benefit; (d) that he was obligated to keep the funds safe; and (e) that he was serving as a fiduciary over these funds. Ahmed Dep. pp. 34-35.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Order of Reference of the U.S. District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) (determination as to the dischargeability of particular debts). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Whether a fact

is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### I.  The State Court Order is Not Entitled To Collateral Estoppel.

The Plaintiff argues first that the Default Judgment Order entered by the Circuit Court of the City of Lynchburg is entitled to collateral estoppel in this Court. Specifically, the Plaintiff asserts that the Default Judgment Order, in granting judgment "on all counts, namely Counts I, II, III, IV and V," necessarily included a finding that Count III of the Plaintiff's Complaint in State Court, for Breach of Fiduciary Duty, was well taken and supported by the evidence.

This Court is required to give the same effect to a judgment of a State court that the rendering court would give to that judgment. 28 U.S.C. § 1738 (the federal full faith and credit statute). The Supreme Court has ruled that collateral estoppel applies in dischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 284 (1991). A default judgment in Virginia will be given collateral estoppel effect, where the matter is actually litigated, and *ex parte* proof in support of a default judgment can satisfy this requirement. *Pahlavi v. Ansari (In re Ansari),* 113 F.3d 17 (4th Cir. 1997); *TransDulles Center, Inc. v. Sharma*, 252 Va. 20 (1996). However, other than a single reference to "Count III," along with a reference to Counts I, II, IV and V, in the Judgment Order, there is nothing to suggest that the issues of whether or not the Defendant owed the Plaintiff a fiduciary duty, and whether or not the Defendant breached that duty, were actually litigated before the Circuit Court. There are no specific findings in the State court's Default Judgment Order supporting the judgment under Count III. *See In re Riggle*, 389 B.R. 167, 175 (D. Colo. 2007) ("The court can deny preclusive effect to the state judgment if the findings were

conclusory or the record, pleadings, and affidavits do not enable the bankruptcy court to discern the basis of the facts"); *Nova Datacom, Inc. v. Verzani* (*In re Verzani*), 2009 WL 2998765 (Bankr. N.D. Ill. 2009) (application of Virginia law; finding that plaintiff failed to show that State court judgment for $275,000 and punitive damages in the amount of $25,000 on two count complaint for breach of contract and fraud was entitled to collateral estoppel); *In re Professional Coatings (N.A.), Inc.*, 210 B.R. 66, 88 (Bankr. E.D. Va. 1997) ("the Court believes that the holding in *TransDulles* requires that there be something in the record which would form the basis for a default judgment").

The Court will deny the Motion insofar as it seeks summary judgment as a matter of collateral estoppel based on the Circuit Court's Default Judgment Order.

## II.     The Court Will Grant the Motion for Summary Judgment.

Section 523(a)(4) of the Bankruptcy Code provides an exception for debts incurred through "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To succeed on a claim of fiduciary defalcation, "a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation." *Kubota Tractor Corp. v. Strack (In re Strack),* 524 F.3d 493, 497 (4th Cir. 2008).

### A. The Debt Arose While the Debtor Was Acting in a Fiduciary Capacity.

The first issue is whether the Debtor was acting in a fiduciary capacity, with respect to Racetrac's funds. The Court does not write on an entirely clean slate here. The U.S. District Court for this district has had occasion to consider the Racetrac GSA in connection with a claim of non-dischargeablity under Section 523(a)(4) of the Code. *See Racetrac Petroleum, Inc. v. Khan (In re Kahn),* 461 B.R. 343 (E.D. Va. 2011). In *Khan*, Judge Ellis had before him precisely

the same GSA at issue in this adversary proceeding. *Id.* Judge Ellis held that, in order for the defendant to be acting in a fiduciary capacity, the Plaintiff must show that: (a) the designated trustee lacks legal title to the property at issue; (b) the trustee is restricted in his use of the property; and (c) the property remains separate from the trustee's own property. *Id.* at 348.

With respect to the first factor, Judge Ellis held that "the parties' clear and explicit assent to Racetrac's continuous, exclusive ownership of the gasoline sales proceeds is clear evidence of their intent to create an express trust." *In re Khan*, 461 B.R. at 349. With respect to the second element, Judge Ellis found that Section 5(A) of the GSA unquestionably provided that the funds would be held in trust for Racetrac, and were to be safeguarded for Racetrac's benefit. Hence, this element was satisfied. *Id.* Addressing the third element, Judge Ellis held that it was sufficient that the parties *intended* to keep the property separate. *Id*. at 350 ("segregation into different bank accounts is not the *sine qua nan* of separate funds; rather, it is sufficient if the parties intend the funds, as here, to be maintained separately in terms of accounting and use").[2]

In short, the case at hand is indistinguishable from *Racetrac Petroleum v. Khan.* There is no genuine dispute of material fact as to whether the Debtor was acting in a fiduciary capacity with respect to the Racetrac funds.

### B. The Debt Arose from the Debtor's Defalcation.

The Debtor argues that, in effect, he didn't steal the funds; rather, Ms. Sultana did. The Fourth Circuit has made it clear that a defalcation "need not 'rise to the level of embezzlement' . . . even an innocent mistake which results in misappropriation or failure to account is

---

[2] Mr. Khan appealed Judge Ellis's Opinion and Order to the Fourth Circuit Court of Appeals. However, more recently, the parties entered into a settlement whereby Mr. Khan stipulated to a non-dischargeable judgment. *Racetrac Petroleum, Inc. v. Khan,* Adv. Pro. No. 10-01431-BFK, Docket Nos. 81-82.

8

sufficient." *In re Uwimana*, 274 F.3d 806, 811 (4th Cir. 2001) (quoting *In re Ansari,* 113 F.3d at 20).[3]

The Restatement (Second) of Trusts, § 184 provides:

> If there are several trustees, each trustee is under a duty to the beneficiary to participate in the administration of the trust and to use reasonable care to prevent a co-trustee from committing a breach of trust or to compel a co-trustee to redress a breach of trust.

Further, a co-fiduciary is liable for the acts of his or her co-fiduciary in failing to account for funds, where the first co-fiduciary either: (a) improperly delegates the administration of the trust to his or her co-trustee; or (b) has enabled his co-trustee to commit a breach of trust, by his or her failure to exercise reasonable care in the administration of the trust.  Restatement (Second) of Trusts, § 224(2)(b) & (d); *see also* Virginia Uniform Trust Code, Va. Code Ann. § 64.2-756(G) ("Each trustee shall exercise reasonable care to: (1) Prevent a co-trustee from committing a serious breach of trust; and (2) Compel a co-trustee to redress a serious breach of trust.")[4]

The drafters' Illustration to subsection (d) of Restatement (Second) of Trusts, Section 224, is instructive here:

> A and B are co-trustees.  A improperly permits B to have sole custody and management of the trust property and makes no inquiry as to his conduct.  B is thereby enabled to sell the trust property and embezzle the proceeds.  A is liable for a breach of trust.

Other Bankruptcy Courts have applied this principle to find the liability of a co-trustee to be nondischargeable under Section 524(a)(4) of the Code.  In *In re Dombek*, the Debtor was a co-fiduciary for the administration of an ERISA-governed 401-K Profit Sharing Plan and Trust with his son, whom the Court called Dombek III.  2012 WL 4757832 (Bankr. N.D. Ill. 2012). The Court held that with respect to the Debtor's liability under ERISA, "by failing to comply

---

[3]  The Supreme Court has granted certiorari to determine the level of culpability required under Section 523(a)(4), i.e., whether mere negligence or a failure to account is sufficient (as is presently the case in the Fourth Circuit), or whether something more may be required. *Bullock v. BankChampaign, N.A.,* 2012 WL 2263286 (2012).
[4]  Virginia Code § 55-541.06 also provides: "The common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of the Commonwealth."

with ERISA § 404(a)(1) in the administration of his specific responsibilities, Defendant enabled co-fiduciary Dombek III to commit breaches of ERISA." *Id*. at *8. The Court in *Dombek* noted that "ERISA § 405(a)(2) imposes liability on a fiduciary for a breach by a co-fiduciary 'if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach.'" *Id.* at *7 (quoting 29 U.S.C. § 1105(a)(2)). This standard of liability is indistinguishable from the common law liability of co-fiduciaries, discussed above.

In the case of *In re Thomas*, the Debtor and his brother were co-trustees of a family trust. 478 B.R. 468 (Bankr. N.D. Ga. 2012). The Court held: "The fact that Debtor may not have directly participated in the actions leading to a damages award is not determinative, because as a co-trustee he had a specific duty to know what was happening. He had a duty to protect trust property from improper dissipation and failed to intervene in a timely manner." *Id.* at 475. The Court in *Thomas* actually applied a more demanding standard for non-dischargeability under Section 523(a)(4), that of "willful neglect," than the Fourth Circuit required in *In re Uwimana,* in which an innocent failure to account was held to be sufficient.

The Debtor is co-liable with Ms. Sultana for her defalcation, notwithstanding the fact that he no longer had access to the Bank of America account into which the funds were deposited. It is clear that by September 2007, the Debtor was no longer monitoring the account. He mistakenly relied on his business partners to account for the funds. When the Debtor learned of the second bank account in January 2008, he failed to act to prevent a defalcation – that is, he failed to do anything to gain control of the funds as a fiduciary. Essentially, between September 2007 when the Debtor stopped monitoring the account, and April 2008 when the funds were dissipated, the Debtor did nothing to protect the funds. The debt here resulted from his

defalcation, i.e., his failure to protect and to account for the funds, while acting in a fiduciary capacity.

### C. The Plaintiff is Not Guilty of Unclean Hands; Alternatively, the Plaintiff's Actions did not Cause the Loss.

Finally, the Debtor argues that Racetrac is barred from recovery by its unclean hands. The basis for this claim is that, taking the evidence in the light most favorable to the non-moving party, Mr. Bowling encouraged Ms. Sultana to open up the second account, to which the Debtor never had access.[5]

The doctrine of unclean hands has been described as follows:

> Pursuant to the equitable maxim that 'He who comes into equity must come with clean hands,' ... the complainant seeking equitable relief must not himself have been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on. Equity will not give relief to one seeking to restrain or enjoin a tortious act where he has himself been guilty of fraud, illegality, tortious conduct or the like in respect of the same matter in litigation.

*Cline v. Berg,* 273 Va. 142, 147 (2007) (quoting *Richards v. Musselman*, 221 Va. 181, 185 n.1 (1980)).  The Court cannot conclude that Mr. Bowling's actions in advising Ms. Sultana to open the second bank account amounts to unclean hands in this case.  There was nothing in the nature of "fraud, illegality, tortious conduct or the like" in his advice to Ms. Sultana.

More fundamentally, the doctrine of unclean hands applies "only when there is a close nexus between a party's unethical conduct and the transactions on which that party seeks relief." *In re Uwimana,* 274 F.3d at 810.  The Court will apply the doctrine of unclean hands "to prevent a party from using the courts to reap the benefits of wrongdoing." *Id*. at 811.  The Debtor's

---

[5] The Debtor also asserted that the GSA was an unconscionable agreement, but the Debtor abandoned this position at oral argument.  In any event, the Court finds that the GSA is not an unconscionable contract.  A contract is unconscionable under Virginia law if it is "one that no man in his senses and not under a delusion would make, on the one hand, and [that] no fair man would accept on the other." *Fransmart, LLC v. Freshii Dev., LLC,* 768 F. Supp. 2d 851, 870-71 (E.D. Va. 2011) (quoting *Mgmt. Enters., Inc. v. Thorncroft Co., Inc*., 243 Va. 469, 473 (1992).  The terms of the contract must be so grossly inequitable that it "shocks the conscience." *Id.*  The contract at hand is not unconscionable.

failure to monitor the account started in September 2007. Ms. Sultana made her unauthorized disbursements in April 2008. Ms. Sultana could have taken the funds at any time in between, and the Debtor had no practical ability to prevent her from taking the funds, absent some affirmative action on his part to gain control over the account. Further, had Mr. Bowling said nothing, and had the funds remained in the first Bank of America account, Ms. Sultana still would have had access to the funds, and the result would not have been any different. The loss here was not caused by Mr. Bowling's advice to Ms. Sultana that she open a new bank account. The loss was caused primarily by Ms. Sultana's misappropriation of the funds, and secondarily (but no less importantly) by the Debtor's failure to monitor the account and to assert control over the funds.

The Court cannot find that the alleged unclean hands of Racetrac's employee caused the loss in this situation.

## Conclusion

For the foregoing reasons, the Court finds that: (a) the State Court Final Judgment Order is not entitled to collateral estoppel; and (b) the debt of the Debtor to Racetrac in the amount of $67,106.48 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). Racetrac will be given 10 days within which to submit a statement of its attorney's fees and costs. The Defendant will be given 10 days thereafter to object to such fees and costs, should the Defendant believe that the fees and costs are unreasonable.[6]

---

[6] Pursuant to Bankruptcy Rule 7054 (incorporating Fed. R. Civ. P. 54(b)), the Court finds that there is no just reason for a delay, and this Order will be final as to Racetrac, notwithstanding the fact that the Debtor's Third-party Complaint against the Third-Party Defendants remains pending.

A separate Order shall issue.

Date: _____          _____
                                       Brian F. Kenney
Alexandria, Virginia                   United States Bankruptcy Judge


Copies to:

Racetrac Petroleum, Inc.
c/o Paul J. Feinman
Petty, Livingston, Dawson & Richards
P. O. Box 1080
Lynchburg, VA 24505
Plaintiff

Chad A. Mooney, Esquire
Petty Livington Dawson & Richards P.C.
P.O. Box 1080
Lynchburg, VA 24505
Counsel to Plaintiff

Tanvir Ahmed
4600 S. Four Mile Run Drive, #1109
Arlington, VA 22204
Defendant

James A. DeVita
Suite 700, 2111 Wilson Boulevard
Arlington, VA 221021
Counsel to Defendant

Sayeeda S. Sultana
939 Willbrook Rd.
Newport News, VA 23602
Third Party Defendant

Anwar Eslam
939 Wilbrook Road
Newport News, VA 23602
Third Party Defendant

Akhtar Jahan
3701 S. George Mason Drive
Alexandria, VA 22041
Third Party Defendant

Tofael Ahmed
3701 S. George Mason Drive
Alexandria, VA 22041
Third Party Defendant